Case 3:07-cv-03728-JSW   Document 6-3   Filed 02/22/2008   Page 1 of 13

# EXHIBIT 2

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY

STATE OF CALIFORNIA                          DEPT. Silver (3/12/91)

vs                                           ACTION NO. CR16037-A

SALVATORE GRAFFAGNINO                        PROBATION OFFICER'S REPORT
Defendant


| | |
|---|---|
| DATE OFFENSE COMMITTED | 10/8/90 |
| DATE OF ARREST | 10/23/90 |
| INFORMATION FILED | 12/20/90 |
| DATE OF REFERRAL | 2/11/90 |
| REPORT FILED | 3/5/91 |
| ORIGINAL OFFENSE | 187 PC<br>12022(b) PC enhancement |
| CONVICTED OFFENSE | Defendant pled guilty to violation of Section 187 PC, murder 2nd degree, on condition he receive 15 years to life in prison. |
| DAYS IN CUSTODY | Actual 141 + 70 Good/Work Time = 211 |
| LEGAL COUNSEL | Richard West |
| PROBATION OFFICER | Sonja Sheeler |
| DATE OF BIRTH | 7/24/69 (21) |
| BIRTHPLACE | New York |
| ADDRESS | 588 Leslie Drive, Salinas |
| TELEPHONE NUMBER | 443-8331 |

1

PENAL CODE SECTION 2900.5 TIME SERVED CREDITS

| Name of Facility | From | To | Total days |
|---|---|---|---|
| Monterey County Jail | 10/23/90 | 3/12/91 | 141 |

| | |
|---|---|
| ACTUAL TIME | 141 |
| GOOD/WORK TIME | 70 |
| TOTAL CREDITS | 211 |

CIRCUMSTANCES OF THE OFFENSE: (Source: Monterey County Sheriff's Department report #11202-90 and court transcripts.)

On 10-8-90 at approximately 1:54 a.m. a sheriff's deputy was dispatched to the area of Rogge Road and Natividad regarding a victim of a stabbing. The reporting party, Donny Blaylock, and two other subjects were contacted at the pay phones in Bolsa Knolls and led the officer to a location in a strawberry field where the victim was found in the driver's seat of a vehicle. The rear end of the vehicle had gone into the furrows of the field. The victim was slumped sideways across the center console and had a large amount of blood on the front of his shirt and also on his sleeves. A very large laceration in the right side of his neck was noted. He had a very faint pulse and was breathing shallowly, responding to the deputy with weak sounds and grunts. The victim was transported by ambulance to Natividad Medical Center. He was identified by an alien registration card found in his clothing. According to medical personnel the 22 year old victim never regained consciousness, expiring on 10-10-90 as the result of anoxic brain damage due to

2

multiple incised wounds.

The autopsy report states that most of the wounds appeared to be caused by hacking or slashing with an elongated sharp object. Defensive type wounds were present on the left and right hands and back of the left forearm. Also present was a small area of scalp bruising on the top of the left side of the head which did not cause significant damage to the underlying skull or brain. Among the multiple wounds was a 7 inch long cut across the neck extending deeply through the soft tissues and largely severing the neck's musculature attachments to the base of the tongue. There was also a stab wound of the left side of the chest below the armpit and deep cuts to the left arm, cuts on both hands, cuts to the mid-thigh and lower left leg, and wounds in the area of the penis.

The reporting party, his brother, and his brother's girlfriend stated that they had been returning from a party in King City when they saw a car containing four Mexicans leaving the field. While investigating the source of headlights in the field, they found the victim. They provided officers with a description of the vehicle they had seen leaving the area.

On 10-23-90 the brothers told Sheriff's deputies that they had lied. Donny Blaylock stated that on the evening of 10-7-90 he had received a phone call inviting him to a party at Alexander's ( a party area in the strawberry fields off Rogge Road). As he approached the area, Sal and Joe Graffagnino almost ran him off the road and told him to follow them. (They stopped at the Quickie Mart on Natividad Road where he was told that they had killed somebody. They said this guy had tried to rape this girl who was with them.

3

Chuck Altemeyer and his girlfriend had also followed them to the shopping center in his truck. The co-defendants were in a blue Mercury Cougar along with the girl who they had picked up in the field and another girl they had been partying with. They had blood on their clothing and on the knives they showed him, a Rambo type knife that belonged to Joe and a Bowie that was Sal's. From what they told him, he reported that Joe was the one who slashed the victim's neck, Sal stabbed him under the arm, and Chuck beat his face in with a pipe. As he did not believe them, he drove back to the scene in his truck with Sal Graffagnino. He then dropped Sal off at his house and returned home where he told his brother what had happened. After taking his brother to the scene, they decided to call 911. ~~[redacted]~~

*Stricken 3-14-91*

The defendants were taken into custody on 10-23-90 while driving a 1980 blue Mercury Cougar. A search of the vehicle and their residence produced several knives, two of which matched the descriptions given by witnesses of the knives held by the defendants on the evening of the killing. Chuck Altemeyer was also taken into custody at his residence. None of the suspects admitted any knowledge of the killing.

Deputies learned from friends of the co-defendants that Sal had arrived at their house on 10-8-90 at approximately 12:30 a.m. with blood on his hands and arms. He told one of them that he had killed a guy and was very upset. His statement to them was the same as he had told the original reporting party. Sal had stated that Joe stuck the knife in the guy's neck and then ripped it out sideways

4

and he had buried his knife up to the handle when he had stabbed the victim, having difficulty removing it because Altemeyer was busy hitting him in the head with the bicycle forks and kicking him. He had washed up at the house, changed his clothes, and left.

On 10-24-90 the sixteen year old girlfriend of suspect Altemeyer told deputies that she had witnessed the stabbing while seated in the Graffagnino vehicle. She and the co-defendants, her boyfriend Chuck, and another girl had been partying near Rogge Road and were leaving when a girl came running down the road yelling for help. She told them that a guy had tried to rape her which made Sal angry. He was saying something like "this guy's gonna pay." When the victim drove his vehicle toward them, Sal pushed him off into the field and Sal and Chuck jumped out of the car. Chuck punched him and Sal was stabbing him. Joe came up behind and stabbed him. She saw the knives in the Graffagnino brothers' hands, describing them and stating that they wear them in sheaths all the time. The girl they had picked up was also seated in the front seat of the vehicle driven by Sal and saw the stabbing. They drove to Natividad Plaza where the girl was told to leave. This witness later heard that Sal was bragging about the stabbing.

The 15 year old girl who was also in the car confirmed the sixteen year old's statement. She saw Altemeyer hitting and kicking the victim while Joe and Sal were using their knives, although she could not see the actual stabbing. She wiped the blood off Sal with her sweatshirt and at Quik Mart Joe and Sal wrapped their knives in it and put it in the trunk of their car. She went to Joe's house with him where Joe put the knives in a metal box behind a wall.

5

When Sal and Blaylock, who followed them to the shopping center, arrived, she went with them back to the crime scene. Blaylock nudged the victim with his foot and said words to the effect, "hey dude, que paso". He tried to remove the victim's wallet from his hip pocket and, as he did, the man slid out of the car and moaned. They looked through the wallet and then threw it out the window as they were driving away. She described the knives and the co-defendants' clothing which included a jacket and a vest with Swordsman colors, a club to which they belong.

    Kim Bartlebaugh told deputies that on 10-7-90 she had been working the streets in Chinatown when a Mexican male offered her ten dollars for a "screw" but she did not agree to this price. As it was getting late, approximately midnight, and she was tired, she asked him for a ride home. Instead of driving her to her motel, the subject drove her out to Natividad and Rogge Roads where he attempted to rape her. She got out of the car in the strawberry field and tried to run away, but was caught by him twice. On the third attempt she ran towards two vehicles driving down the dirt road. She yelled for help and told the occupants that this guy was trying to rape her, then joined them in their car. They said "We'll kill him" and turned the vehicles around and headed towards her attacker's car, eventually ramming it and forcing it into a field. The driver of the car she was in exited the vehicle ~~with a~~ knife in his hand ~~and ran to the victim's car~~. She saw two subjects at the car making up and down motions with their hands but did not realize they were stabbing the victim until the driver returned with the knife in his hand. The headlights of both vehicles were on and she

6

could ~~see~~ NOT the victim while he was being stabbed. The two subjects got back into the car and one of them said something like "he's dead". The one who was driving was devastated by what he had done and said "I killed him" and something about shoving it to the hilt. They said they cut his "thing" off. The other guy just kept saying calm down. They drove to Natividad Plaza where she was let out of the vehicle.

VICTIM'S STATEMENT AND CONDITION: (Source: Sheriff's Department report and District Attorney.)

The victim's parents traveled from Mexico to see their son at Natividad Medical Center and retrieved some of his personal belongings. They returned to Mexico without his body and were never interviewed.

STATEMENT OF DEFENDANT: (Source: Interview with defendant on 2-27-91.)

Salvatore Graffagnino states that he does not remember much of what happened because it happened so fast. The victim almost hit his brother who was walking and he pushed the victim's bumper as he was backing up. The defendant jumped out of his car and hit the victim with his fist on the left side of his jaw. He does ~~not~~ remember taking a knife out and stabbing him. At the time he was just going to bring him into jail or "kick his butt." He took the plea because he knew they had caused the death. He felt bad when he

7

heard the victim had died and wishes it had never happened.

He denies any prejudices against minorities, claiming friends of Mexican descent. The club he belongs to, the Swordsmen, is a Renaissance Club and is not a gang or a white supremacist group. The defendant wants to get into school and a work program while in state prison.

JUVENILE RECORD:    (Confidential)

None.

PRIOR CRIMINAL RECORD:    (Source: Department of Justice CII #A09584943.)

None.

PRIOR TRAFFIC RECORD:    (Source: Department of Motor Vehicles.)

None.

## SOCIAL HISTORY

(Source: Interview with defendant on 2-27-91.)

FAMILY HISTORY DATA:

    Father: Salvatore Graffagnino, age 46, resides in San Jose, truck driver.

    Mother: Ilona Moss, age 43, resides at 588 Leslie Drive, Salinas, disabled.

    Siblings: Two brothers:
          Joseph, age 22, co-defendant instant offense.
          Tony, age 17, resides with mother, student.
         One half-sister:
          Heather Moss, age 7, resides with mother, student.

FAMILY CRIMINALITY: The defendant reports that his father was in federal prison for one year, approximately 1978, for hijacking.

DEFENDANT'S MENTALITY: The defendant completed the eleventh grade at Fernley High School in Nevada. He appears to be of average intelligence.

EMPLOYMENT HISTORY: (Social Security #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.)

| | |
|---|---|
| Boxer | August to October 1990 - Coronet Foods, Salinas - $7.80 an hour. |
| Fueling trucks | May to July 1990 - Inman Distributing, Salinas - $5.00 an hour. |
| Splitting/delivery | January 1989 to February 1990 - Joy's Wood, Reno, Nevada - $500 a week net. |
| Security guard | June to December 1988 - Burns Security, Reno, Nevada - $5.25 an hour. |

MARITAL HISTORY: The defendant has never been married and has no children.

HEALTH AND HABITS: The defendant claims good health. While living in Fernley, Nevada, he was doing some heavy drinking on weekends between 1988 and 1990. Since May 1990 he only drinks occasionally. He smokes about one marijuana joint a week, has tried cocaine twice, crank three or four times. The night of the offense he shared three cases of beer and 1 1/2 fifths of Jack Daniels with nine people.

MILITARY HISTORY: None.

EVALUATION: This 21 year old defendant has pled guilty to 2nd degree

murder on the condition that he receive a fifteen year to life term. He has no prior record. He verbalizes regret over the death of the victim and accepts responsibility, even though he claims to have little recall of the event. From the statements of witnesses it appears that his recall was far better when he was telling his friends that he had killed a Mexican. The fury of the attack as evidenced by the victim's wounds suggests an act of violence and cruelty that is difficult to attribute to another human being, exacerbated by his returning to the scene to show a friend his grizzly act and then coldly leaving the victim to die. The motive for this behavior escapes understanding. Society knows no other way to protect itself from such an individual aside from long term incarceration in state prison.

## SENTENCING CONSIDERATIONS

PROBATION ELIGIBILITY: The defendant is statutorily ineligible for probation.

POSSIBLE FACTORS IN AGGRATVATION:   (Rule 421)

Facts relating to the crime:

1. The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness or callousness, whether or not charged or chargeable as an enhancement under section 12022.7.

2. The defendant was armed with or used a weapon at the time of the commission of the crime, whether or not charged or chargeable as an enhancement under section 12022 or 12022.5.

10

3. The victim was particularly vulnerable.

4. The defendant used or involved minors in the commission of the crime.

POSSIBLE FACTORS IN MITIGATION: (Rule 423)

Facts relating to the crime, including the fact that:

1. He has no prior record or an insignificant record of criminal conduct considering the recency and frequency of prior crimes.

BASE TERM SENTENCING RANGE:

187 PC, 2nd degree, felony          15 years to life

ENHANCEMENTS: 12022(b) PC charged not pled or proven.

STATE RESTITUTION FUND:

    a. Restitution Fine: The defendant be required to pay a restitution fine of $100.

    b. Restitution: The defendant not be required to pay restitution to the victim's family.

    c. Compelling and Extraordinary Reasons: No restitution is recommended in view of the negotiated plea for state prison and the whereabouts of the victim's family being unknown.

RECOMMENDATION: It is respectfully recommended that the defendant be committed to the California Department of Corrections for the term prescribed by law.

SS:sa                                          Respectfully submitted,

                                               VINCENT J. LOSTETTER
                                               CHIEF PROBATION OFFICER

Dated this 4th day of March, 1991.

I have read and considered the                 Sonja Sheeler
foregoing report of the                        Deputy Probation Officer
Probation Officer

---------------------------                    ---------------------------
Judge of the Superior Court                    Approved for filing

12