# EXHIBIT 4

## INDETERMINATE SENTENCE PAROLE RELEASE REVIEW
(Penal Code Section 3041.2)

SALVATORE GRAFFAGNINO, E-89844
SECOND-DEGREE MURDER

AFFIRM:                              _____

MODIFY:                              _____

REVERSE:                                     X_____

Around midnight on October 8, 1990, Salvatore Graffagnino and his two crime partners beat and stabbed to death 22-year-old Jose Gonzalez.

According to the probation report, 21-year-old Mr. Graffagnino, his brother, 22-year-old Joe Graffagnino, Chuck Altemeyer, and two female juveniles were partying in a field in Salinas when a girl ran nearby yelling for help. She told them a man tried to rape her, to which Mr. Graffagnino said something like, "this guy's gonna pay." Shortly thereafter, the man said to have attacked the girl, later identified as Mr. Gonzalez, drove his car towards the group. Mr. Graffagnino used his car to push Mr. Gonzalez's car to a place where he could not drive off. Mr. Graffagnino then jumped out of the car and, along with his brother and Mr. Altemeyer, at some point attacked Mr. Gonzalez. Mr. Altemeyer beat him and Mr. Graffagnino stabbed him repeatedly.

After attacking Mr. Gonzalez, the three returned to their cars and ultimately left the scene. Mr. Gonzalez was transported to a medical center after responding officers found him at the scene; he was in his car, slumped over the center console. He died a short time later from his injuries.

Mr. Graffagnino and his two crime partners were arrested approximately two weeks after the attack. Mr. Graffagnino had no other documented criminal history at the time. He pled guilty to second-degree murder and was sentenced to 15 years to life in prison.

Since his incarceration, Mr. Graffagnino has been written-up six times for rules violations, specifically, three times in 1994 for refusing a cell move, conduct/disobeying rules, and threatening staff, and three times in 1992 for stimulants and sedatives, horseplay, and possession of another inmate's property. He has also been counseled four times, most recently in 1997, for minor misconduct.

To his credit, Mr. Graffagnino has worked in prison to enhance his ability to function within the law upon release. He earned his GED in 1993, has completed other educational courses, has completed vocational welding, building maintenance, and landscaping, and has worked in the institutional setting as, among other things, a clerk, teacher's aide, porter, cook, and server. While minimally until 1997, he has also participated in self-help and therapy, including Alcoholics Anonymous, Narcotics Anonymous, Lifer's Group, and the Impact Program. He has

Salvatore Graffagnino, E-89844
Second-Degree Murder
Page 2

received favorable reports, inclusive of some low risk assessments, from correctional and mental-health professionals, has maintained relationships with family and others, and has made realistic, confirmed parole plans to live with his mother and sister in Monterey County, his county of last residence, and work locally at a produce warehouse.

Likewise, Mr. Graffagnino accepts responsibility and expresses remorse for murdering Mr. Gonzalez. Past evaluators have concluded that his remorse is "quite sincere and genuine." And the 2005 Board agreed, finding also that he "appears [to have] real good insight" into his crime.

But despite any positive factors tending to support his parole suitability at this time, the second-degree murder for which Mr. Graffagnino was convicted was especially grave because the victim, who was in his car at the time of the attack and outnumbered three to one, was especially vulnerable and the manner in which he was killed was exceedingly brutal. Each of Mr. Gonzalez's three attackers was armed, Mr. Graffagnino and his brother with knives and Mr. Altemeyer with a bicycle fork. According to the probation report, the autopsy concluded that "most of the wounds appeared to be defensive wounds caused by hacking or slashing with an elongated sharp object." The same reference noted the wounds as being "a 7 inch long cut across the neck ... a stab wound of the left side of the chest below the armpit and deep cuts to the left arm, cuts on both hands, cuts to the mid-thigh and lower left leg, and wounds in the area of the penis." Furthermore, Mr. Graffagnino's own description of the offense, based on statements contained in the probation report by friends who saw him shortly after the crime—that his brother "stuck the knife in the guy's neck and then ripped it out sideways and ... had buried his knife up to the handle when he had stabbed the victim, having difficulty removing it because Altemeyer was busy hitting the victim in the head with the bicycle forks and kicking him"—demonstrates not only the extreme brutality of this murder but also the extreme callousness with which it was carried out. This factor alone is sufficient for me to conclude presently that Mr. Graffagnino's release from prison would pose an unreasonable public-safety risk.

Additionally, Mr. Graffagnino, after initially leaving, returned to the scene of the attack with a friend, Mr. Blaylock, and saw that Mr. Gonzalez was still alive—yet left him there a second time without rendering aid or notifying authorities—demonstrating an exceptionally callous disregard for human suffering. Before leaving him, however, according to Mr. Blaylock's statements to police, as documented in the probation report, Mr. Blaylock removed Mr. Gonzalez's wallet from his pocket and when he did, Mr. Gonzalez moved and moaned. The probation officer concluded her report by writing, "[t]he fury of the attack as evidenced by the victim's wounds suggests an act of violence and cruelty that is difficult to attribute to another human being, exacerbated by [Mr. Graffagnino's] returning to the scene to show a friend his grizzly act and then coldly leaving the victim to die."

Now age 36, after approximately 15 years in prison, Mr. Graffagnino has made some encouraging gains. But given the current record before me and after carefully considering the very same factors the Board must consider, I find the gravity of the murder committed by

Salvatore Graffagnino, E-89844
Second-Degree Murder
Page 3

Mr. Graffagnino presently outweighs the positive factors tending to support his parole suitability. Accordingly, because I believe his release from prison would pose an unreasonable risk of danger to society at this time, I REVERSE the Board's 2005 decision to grant parole to Mr. Graffagnino.

Decision Date: 5/3/2006

ARNOLD SCHWARZENEGGER
Governor, State of California