# EXHIBIT 5

MC-275

Name    Salvatore Graffagnino

Address    P. O. Box 705, WA-306L

    Soledad, CA 93960-0705

CDC or ID Number    E-89844

### SUPERIOR COURT OF CALIFORNIA

### COUNTY OF MONTEREY

*(Court)*

| | |
|---|---|
| Salvatore Graffagnino<br>Petitioner<br><br>vs.<br><br>Arnold Schwarzenegger, Governor<br>Respondent | PETITION FOR WRIT OF HABEAS CORPUS<br><br>No. _____<br>*(To be supplied by the Clerk of the Court)* |

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

**This petition concerns:**

| | |
|---|---|
| ☐ A conviction | ☒ Parole |
| ☐ A sentence | ☐ Credits |
| ☐ Jail or prison conditions | ☐ Prison discipline |
| ☐ Other (specify): _____ | |

1. Your name: __Salvatore Graffagnino__

2. Where are you incarcerated? __Correctional Training Facility, Soledad,  CA__

3. Why are you in custody? ☒ Criminal Conviction  ☐ Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   __Second Degree Murder__

   b. Penal or other code sections: __187__

   c. Name and location of sentencing or committing court: __Superior Court of California, County of Monterey__

   d. Case number: __CR 16037__

   e. Date convicted or committed: __February 11, 1991__

   f. Date sentenced: __March 14, 1991__

   g. Length of sentence: __15 years to life__

   h. When do you expect to be released? __Unknown__

   i. Were you represented by counsel in the trial court? ☒ Yes.  ☐ No.  If yes, state the attorney's name and address:

   __Richard West, Public Defenders Office, Salinas, CA__

4. What was the LAST plea you entered? *(check one)*

   ☐ Not guilty  ☒ Guilty  ☐ Nolo Contendere  ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   ☐ Jury  ☐ Judge without a jury  ☐ Submitted on transcript  ☐ Awaiting trial

6.  GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

See attached petition

_____

_____

_____

a.  Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

_____

_____

_____

_____

_____

_____

_____

_____

_____

b.  Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

_____

_____

_____

7. Ground 2 or Ground _____ (*if applicable*):

_____
_____
_____
_____

a. Supporting facts:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

b. Supporting cases, rules, or other authority:

_____
_____
_____
_____
_____

8. Did you appeal from the conviction, sentence, or commitment?  ☐ Yes.  ☒ No.   If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

   _____

   b. Result: _____   c. Date of decision: _____

   d. Case number or citation of opinion, if known: _____

   e. Issues raised:  (1) _____

           (2) _____

           (3) _____

   f. Were you represented by counsel on appeal?  ☐ Yes.  ☐ No.  If yes, state the attorney's name and address, if known:

   _____

9. Did you seek review in the California Supreme Court?  ☐ Yes.  ☒ No.   If yes, give the following information:

   a. Result: _____   b. Date of decision: _____

   c. Case number or citation of opinion, if known: _____

   d. Issues raised:  (1) _____

           (2) _____

           (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

   N/A

11. Administrative Review:

   a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

   N/A

_____

_____

_____

_____

_____

_____

_____

_____

   b. Did you seek the highest level of administrative review available?  ☐ Yes.  ☐ No.

   *Attach documents that show you have exhausted your administrative remedies.*

MC-275 [Rev. January 1, 1999]          **PETITION FOR WRIT OF HABEAS CORPUS**    | WEST GROUP Official Publisher |    Page five of six

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☐ Yes. If yes, continue with number 13. ☒ No. If no, skip to number 15.

13. a. (1) Name of court: _____

   (2) Nature of proceeding (for example, "habeas corpus petition"): _____

   (3) Issues raised: (a) _____

      (b) _____

   (4) Result (Attach order or explain why unavailable): _____

   (5) Date of decision: _____

   b. (1) Name of court: _____

   (2) Nature of proceeding: _____

   (3) Issues raised: (a) _____

      (b) _____

   (4) Result (Attach order or explain why unavailable): _____

   (5) Date of decision: _____

   c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
N/A

_____

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☒ No. If yes, explain:

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
N/A

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: August 5, 2006                    ▶ _Al Gaffagnino_
                                              (SIGNATURE OF PETITIONER)

1  Salvatore Graffagnino
   E-89844
2  P.O. Box 705, WA-306L
   Soledad, CA  93960-0705
3

4  Petitioner, In Pro Per

5

6

7

8

9

10          SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                    COUNTY OF MONTEREY

12

13

14  In re                    )    Case No.
                             )
15  SALVATORE GRAFFAGNINO    )    **PETITION FOR WRIT**
                             )    **OF HABEAS CORPUS**
16  On Habeas Corpus         )

17

18      **TO THE HONORABLE JUDGE OF THE SUPERIOR COURT OF**
         **CALIFORNIA, IN AND FOR THE COUNTY OF MONTEREY**
19

20      Petitioner hereby petitions for a writ of habeas corpus and

21  by this verified petition states as follow:

22                            I

23                      INTRODUCTION

24  1. Petitioner is unlawfully restrained because his right to

25  substantive and procedural due process protections under the law

26  guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the

27  United States Constitution, and the due process clause of the

28  California Constitution, were violated by the Governor.

                              1

1    The Governor abused his discretion by denying Petitioner the

2    due process mandated under state law.  The Governor's decision

3    failed to follow or comply with the applicable regulations, as

4    well as the federal and state constitutions.  The Governor

5    relied on unchanging factors to reverse Petitioner's parole

6    release date.  The Governor's reversal of Petitioner's parole

7    release date was arbitrary and capricious and failed to apply

8    or conform with legal principles and should be overturned.

9                                    II

10                                **PARTIES**

11       2. Petitioner Salavatore Graffagnino is a prisoner of the

12   State of California and is currently incarcerated at the

13   Correctional Training Facility in Soledad, California.

14       3. Respondent Ben Curry is the Warden of the Correctional

15   Training Facility in Soledad, California.

16       4. Respondent J. Dovey is the Director of the California

17   Department of Correction and Rehabilitation.

18       5. Respondent Arnold Schwarzenegger is the current Governor

19   of the State of California.

20                                   III

21                         **STATEMENT OF FACTS**

22       6. Petitioner pled guilty to second degree murder on February

23   11, 1991.  Petitioner was sentenced to a term of 15 years-to-

24   life on March 14, 1991.

25       7. On December 9, 2005, Petitioner's third subsequent Parole

26   Consideration Hearing was conducted before the Board of Parole

27   Hearings.  Petitioner was found suitable for parole and a base

28   term of 20 years was assessed.

                                     2

1    8. Petitioner has no other plain, speedy or adequate remedy
2    in the ordinary course of the law.  This petition is addressed
3    to this courts original habeas corpus jurisdiction because the
4    issues raised are of constitutional dimension, questioning the
5    legality of the Petitioner's confinement.  A Writ of Habeas
6    Corpus is the appropriate remedy to address unlawful custody or
7    an unlawful condition of confinement.  A petition for a Writ of
8    Habeas Corpus based upon factual allegations to be determined by
9    reviewing court is generally first brought in the Superior
10   Court.  (*In re Hillery* (1972) 202 Cal.App.2nd 293.)  Habeas
11   corpus is the appropriate remedy for petitioner's unlawful
12   incarceration.  In this case Petitioner has alleged violation of
13   his constitutional rights to due process in violation of the
14   Fifth, Sixth and Fourteenth Amendments to the United States
15   Constitution, the due process clause of the California
16   Constitution, California Penal Code section 3041 et seq., and
17   established law.  This is Petitioner's first request for habeas
18   corpus relief, and thus is properly filed in this court.  Venue
19   is proper as Monterey County is Petitioner's County of
20   Commitment.  (*In re Sena* (2001) 94 Cal.App.4th 836.)
21   9. The accompanying Memorandum of Points and Authorities and
22   factual allegations contained therein, as well as the exhibits
23   appended to this petition, are incorporated herein by reference.
24   WHEREFORE, petitioner respectfully prays that this Court:
25   A. Issue a Writ of Habeas Corpus directing the Director of
26   the Department of Corrections and Rehabilitation to inquire into
27   the legality of Petitioner's incarceration;
28   B. Order the immediate release of the Petitioner; or

3

1    C. Order the Governor to vacate his decision reversing

2  parole;

3    D. Conduct an evidentiary hearing;

4    E. Appoint council;

5    F. Declare the rights of the parties; and

6    G. Grant any other and further relief the court deems just.

7

8  DATE:  August 6, 2006              Respectfully submitted,

9

10                                    Salvatore Graffagnino
                                       Petitioner, In Pro Per

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

4

1

**VERIFICATION**

2     I, Salvatore Graffagnino, state:

3     I am the petitioner in this action. All facts in the above

4   documents, not otherwise supported by citations to the record,

5   exhibits, or other documents, are true of my own personal

6   knowledge, except as to matters that are therein stated on

7   information and belief, and as to those matters I believe them

8   to be true.

9     I declare under penalty of perjury that the foregoing is true

10   and correct and that this declaration was executed August 6,

11   2006, at the Correctional Training Facility, Soledad,

12   California.

13

14                                   Salvatore Graffagnino

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1    **MEMORANDUM AND POINTS OF AUTHORITIES**

2    **INTRODUCTION**

3    The constitution and statutes set forth standards and

4    criteria that limit the Governor's review of a parole decision

5    pursuant to the Constitution of the State of California, Article

6    V, section 8(b), and give rise to a protected liberty interest

7    under the California due process clause.  The Governor may only

8    affirm, modify or reverse the decision of the parole authority

9    on the basis of the same factors which the parole authority is

10   required to consider.  Thus, the Governor's decision must be

11   based on the same factors that restrict the Board of Parole

12   Hearings [hereinafter "Board"] in rendering its decision.  As

13   relevant here, a prisoner granted parole by the Board has an

14   expectation that the Governor's decision to affirm, modify, or

15   reverse the Board's decision will be based upon the same factors

16   that the Board is required to consider.

17   Petitioner alleges that the Governor of the State of

18   California abused his discretion by failing to follow or comply

19   with established principles of law in this case.

20   **ARGUMENT**

21   **I**

22   A.   Standard of Review

23   The California Supreme Court has established the criteria for

24   judicial review.

25   "Although article V, section 8(b), confers upon the

26   Governor's discretion regarding the manner in which to weigh the

27   constitutionally specified factors, and authorizes the Governor

28   to exercise judgement in reaching a decision, the voters in

6

1 adopting the constitutional provision placed substantive
2 limitations upon the Governor's exercise of that judgement and
3 discretion.  The provision mandates that the Governor consider
4 only the same factors that may be considered by the Board.
5 Having chosen to review a parole decision, the Governor lacks
6 discretion to disregard this requirement, which distinguishes
7 pardons and commutations.  Because this requirement gives rise
8 to a liberty interest protected by due process of law, and
9 because due process of law requires that a decision considering
10 such factors be supported by some evidence in the record, the
11 Governor's decision is subject to judicial review to ensure
12 compliance with this constitutional mandate.  As with decisions
13 of the Board, the existence of this due process right cannot
14 exist in any practical sense without a remedy against its
15 abrogation.  [Citation.]" (*In re Rosenkrantz*, 29 Cal.4th 616,
16 664-665 (2002).)

17    "[T]he courts properly can review a Governor's decisions
18 whether to affirm, modify, or reverse parole decisions by the
19 Board to determine whether they comply with due process of law,
20 and that such review properly can include a determination of
21 whether the factual basis of such a decision is supported by
22 some evidence in the record that was before the Board."
23 (*Rosenkrantz,* p. 668.)

24    Therefore a decision made without any supporting evidence
25 would be arbitrary and capricious.  Searching the record to
26 determine whether some evidence supports the Governor's parole
27 suitability determination is a regular function of deferential
28 review for abuse of discretion.

1    B.   Petitioner Was Denied the Due Process Mandated Under
          State Law
2

3       The statutory procedures governing the Governor's review of a

4    parole decision pursuant to article V, section 8(b), are set

5    forth in Penal Code section 3041.2, which states: "(a) During

6    the 30 days following the granting, denial, revocation, or

7    suspension by a parole authority of the parole of a person

8    sentenced to an indeterminate prison term based upon a

9    conviction of murder, the Governor, when reviewing the

10   authority's decision pursuant to subdivision (b) of Section 8 of

11   Article V of the Constitution, shall review materials provided

12   by the parole authority.

13      "(b)   If the Governor decides to reverse of modify a parole

14   decision of a parole authority pursuant to subdivision (b) of

15   Section 8 of Article V of the Constitution, he or she shall send

16   a written statement to the inmate specifying the reasons for his

17   or her decision."

18      Article V, section 8(b), provides that "the Governor *may*

19   review [parole] decision *subject to procedures provided by*

20   *statute.*   (Italics added.)   This language confers upon a

21   Governor the discretion whether to review a parole decision, but

22   if such discretion is exercised, he or she is constrained by the

23   procedures specified by statutes.   Article V, section 8(b),

24   further states: "The Governor may only affirm, modify, or

25   reverse the decision-of the parole authority *on the basis of the*

26   *same factors which the parole authority is required to*

27   *consider.*" (Italics added.)   Thus, the Governor's decision must

28   be based upon the same factors that restrict the Board in

                                    8

1  rendering its parole decision.  [Citations.]  [¶] The foregoing

2  constitutional and statutory provisions thus set forth standards

3  and criteria that limit the Governor's review of a parole

4  decision pursuant to article V, section 8(b), and give rise to a

5  protected liberty interest under California due process clause."

6  (*In re Rosenkrantz, supra,* 29 Cal.4th 616, 660-661 (2002),

7  emphasis in original.)

8      The United States Supreme Court has made it clear that the

9  "some evidence" standard discussed in *Hill* is only one aspect of

10  judicial review for compliance with minimum standards of due

11  process.  *(Superintendent v. Hill,* 472 U.S. 445 (1985).)

12      "Accordingly, were the Board [or Governor] to determine

13  whether inmates are suitable for parole by flipping a coin, it

14  could not insulate its proceedings from judicial correction

15  simply by identifying 'some evidence' in the record to support

16  each result."  (*In re Ramirez,* 94 Cal.4th 549, 565 (2001).)

17      The failure to follow the procedures specified by statute,

18  and ignoring the factors that the Board is required to follow in

19  establishing an indeterminate sentence as particularly

20  egregious, resulted in a due process violation.  The Governor

21  failed to follow the due process mandated by constitutional and

22  statutory authority and his decision should be reversed.

23      C.  The Governor's Decision Failed To Follow or Comply With
            The Applicable Regulations

24

25  1.  Criteria for Determining Parole

26  The California Code of Regulations, (hereinafter CCR), title

27  15, division 2, chapter 3, article 2400 et seq. sets forth

28  ///

9

criteria for determining parole unsuitability for persons found

guilty of murders committed after November 7, 1978.

Subdivision (a) of section 2402 provides:  "The panel shall

first determine whether the life prisoner is suitable for

release on parole.  Regardless of the length of time served, a

life prisoner shall be found unsuitable for and denied parole if

in the judgement of the panel the prisoner will pose an

unreasonable risk of danger to society if released from prison."

Subdivision (b) of section 2402 directs the Board to consider

"[a]ll relevant, reliable information available to the panel...

in determining suitability for parole.  Such information shall

include [(1)] the circumstances of the prisoner's social

history; [(2)] past and present mental state; [(3)] past

criminal history, including involvement in other criminal

misconduct which is reliable documented; [(4)] the base and

other commitment offenses, including behavior before, during and

after the crime;  [(5)] past and present attitude toward the

crime;  [(6)] any conditions of treatment or control, including

the use of special conditions under which the prisoner may

safely be released to the community; and [(7)] any other

information which taken alone may not firmly establish

unsuitability for parole may contribute to a pattern which

results in a finding of unsuitability."

Subdivision (c) of section 2402 set forth the "circumstances

tending to show unsuitability" for parole, which "include: [¶]

[(1)] Commitment Offense.  The prisoner committed the offense in

an especially heinous, atrocious or cruel manner.  The factors

to be considered includes: [¶] (A) Multiple victims were

1 │ attacked, injured or killed in the same or separate incidents.

2 │ [¶] (B) The offense was carried out in a dispassionate and

3 │ calculated manner, such as an execution-style murder. [¶] (C)

4 │ The victim was abused, defiled or mutilated during or after the

5 │ offense. [¶] (D) The Offense was carried out in a manner which

6 │ demonstrates an exceptionally callous disregard for human

7 │ suffering. [¶] (E) The motive for the crime is inexplicable or

8 │ very trivial in relation to the offense.    [¶] (2) Previous

9 │ Record of Violence.   The prisoner on previous occasions

10 │ inflicted or attempted to inflict serious injury on a victim,

11 │ particularly if the prisoner demonstrated serious assaultive

12 │ behavior at an early age. [¶] (3) Unstable Social History.  The

13 │ prisoner has a history of unstable or tumultuous relationships

14 │ with others. [¶] (4) Sadistic Sexual Offenses.  The prisoner has

15 │ previously sexually assaulted another in a manner calculated to

16 │ inflict unusual pain or fear upon the victim.   [¶]  (5)

17 │ Psychological Factors.  The prisoner has a lengthy history of

18 │ severe mental problems related to the offense. [¶]  (6)

19 │ Institutional Behavior.  The prisoner has engaged in serious

20 │ misconduct in prison or jail."  According to the Governor none

21 │ of these last five unsuitability factors applied to Petitioner.

22 │     Subdivision (d) of section 2402 sets forth the "circumstances

23 │ tending to show suitability" for parole, which "include: [¶] (1)

24 │ No Juvenile Record.  The prisoner does not have a record of

25 │ assaulting others as a juvenile or committing crimes with a

26 │ potential of personal harm to victims. [¶] (2) Stable Social

27 │ History.  The prisoner has experienced reasonable stable

28 │ relationships with others. [¶] (3) Signs of Remorse.  The

1  prisoner performed acts which tend to indicate the presence of
2  remorse, such as attempting to repair the damage, seeking help
3  for or relieving suffering of the victim, or indicating that he
4  understands the nature and magnitude of the offense. [¶] (4)
5  Motivation for Crime.  The prisoner committed his crime as a
6  result of significant stress in his life, especially if the
7  stress has built over a long period of time. ... [¶] (6) Lack of
8  Criminal History.  The prisoner lacks any significant history of
9  violent crime. [¶] (7) Age.  The prisoner's present age reduces
10 the probability of recidivism. [¶] (8) Understanding and Plans
11 for Future.  The prisoner has made realistic plans for release
12 or has developed marketable skills that can be put to use upon
13 release. [¶] (9) Institutional Behavior.  Institutional
14 activities indicate an enhanced ability to function within the
15 law upon release."  According to the Governor all of the nine
16 suitability factors applied to Petitioner.
17     "The Board's authority to make an exception [to the
18 requirement of setting a parole date] based on the gravity of a
19 life term inmate's current or past offenses should not operate
20 so as to swallow the rule that parole is 'normally' to be
21 granted.  Otherwise, the Board's case-by-case ruling would
22 destroy the proportionality contemplated by Penal Code section
23 3401, subdivision (a), and also by the murder statutes, which
24 provide distinct terms of life without possibility of parole, 25
25 years to life, and 15 years to life for various degrees and
26 kinds of murder.  (Pen. Code, § 190 et seq.)  [P] Therefore, a
27 life term offense or any other offenses underlying an
28 indeterminate sentence must be particularly egregious to justify

1  the denial of a parole date." (*In re Ramirez*, 94 Cal.App.4th at
2  p. 570.)

3     For the Governor to rely on the nature of the commitment
4  offense as evidence the Petitioner would pose an unreasonable
5  risk of danger to society requires some evidence that the crime
6  was "particularly egregious" and must rely on the detailed
7  standard as specified in Board regulations.

8     2. The Governor's Decision

9     The Governor's decision may be upheld only if it was based on
10  the factors that he is required to consider under the relevant
11  statutes and regulations.  The Board's regulations, as shown
12  above, set forth very specific considerations that the Board,
13  and therefore, the Governor, must take into account in
14  determining whether a prisoner is suitable for parole or not
15  suitable for parole.

16     This same standard of review applies to judicial review of
17  the Governor's decision to reverse the Board's parole decision.
18  (*Rosenkrantz,* at p. 667.)  "[T]he courts properly can review a
19  Governor's decisions whether to affirm, modify, or reverse
20  parole decisions by the Board to determine whether they comply
21  with due process of law, and ... such review properly can
22  include a determination of whether the factual basis of such a
23  decision is supported by some evidence in the record that was
24  before the Board."  (*Rosenkrantz,* at p. 667.)  "[A] parole
25  decision by the Governor ... [must] be based upon *the same*
26  *factors the Board is required to consider.*  Due process of law
27  requires that this decision be supported by some evidence in the
28  record.  As with the discretion exercised by the Board in making

1   its decision, the precise manner in which the specified factors
2   relevant to parole suitability are considered and balanced lies
3   within the discretion of the Governor, but the decision must
4   reflect an *individualized consideration of the specified*
5   *criteria* and cannot be arbitrary or capricious.  (*Rosenkrantz,*
6   at pp. 676-677, emphasis added.)

7       The only regulatory factor addressed by the Governor, in his
8   letter of reversal, is § 2402 (c)(1)(D) ["The offense was
9   carried out in a manner which demonstrates an exceptionally
10  callous disregard for human suffering."] (See Indeterminate
11  Sentence Parole Release Review (hereinafter ISPRR), Exhibit 1,
12  p. 2.)

13      The Governor relied on two "circumstances" to support his
14  decision to reverse the grant of parole:  The brutality of the
15  attack and Petitioner's return to the crime scene.  As will be
16  shown below, the Governor decision lacked any evidence in
17  support.

18      There has never been any evidence presented the Petitioner is
19  responsible for all the wounds inflicted on the victim.  There
20  is evidence that two other individuals who participated in the
21  attack also inflicted wounds on the victim.  The Governor notes
22  the attack involved three individuals and then uses that fact as
23  demonstrating that the crime was extremely brutal and callous.
24  And that this factor alone is sufficient to prove that
25  Petitioner poses an unreasonable risk to public safety if
26  released on parole.  The Governor's reliance on the acts of the
27  other individuals to aggravate Petitioner's role in the crime
28  cannot stand.  Petitioner has openly admitted to his involvement

14

1  and actions concerning his participation in this crime.   The
2  attribution of the acts of others to enhance the aggravating
3  factors against Petitioner is demonstrative that the Governor
4  did not give the case-by-case individualized consideration
5  required by board regulations and law.   (See ISPRR, p. 2.)
6      The Governor then speculates concerning Petitioner's motive
7  for returning to the scene of the incident and then relies on
8  this speculation as evidence demonstrating an exceptionally
9  callous disregard for human suffering.   Petitioner returned to
10  the scene of the incident to see what the victim was doing.   At
11  no time did Petitioner believe that the victim had been mortally
12  wounded.   There has never been any evidence produced, either at
13  sentencing or in the Probation Officer's Report (hereinafter
14  POR), to prove otherwise.   Therefore, the Governor's speculation
15  is without merit.
16      The Governor relied on the POR as the sole source of evidence
17  to support the decision to reverse the grant of parole.   The
18  Governor's reliance on the POR is misguided.   (See *People V*
19  *Overton,* 190 Cal.App.2d 369 (1961) [a probation report is not
20  evidence, and may contain extrajudicial material].)   Courts in
21  California have long recognized that POR's are advisory only and
22  often contain, as is the case here, unsubstantiated and
23  uncorroborated statements.   (*People v. Johnson,* 70 Cal.App.4th
24  1429 (1999) [a probation report is advisory only].)
25      The Governor is required by law to consider all relevant and
26  reliable information.   The Governor's reliance on
27  unsubstantiated, uncorroborated and unreliable hearsay evidence
28  is against all concepts of fairness and justice.   The

1    determination of the facts must be based on evidence presented

2    at trial, not on the probation report.  (*People v. Davis*, 270

3    Cal.App.2d 841 (1969).)

4        The Legislature did not intend for any single factor to

5    consistently trump all others.  Yet this is exactly what is

6    happening.  Decision after decision from the Executive focuses

7    almost exclusively on the commitment offense, a sub-factor among

8    fifteen.  The reduction of the parole assessment process to

9    consideration of one factor, and one factor alone, was never

10   intended by the Legislature and cannot be permitted.

11       The Governor lacked not only regulatory authority but any

12   evidence in the record to support his decision.  The Governor

13   failed to follow and apply the applicable regulations to his

14   decision.  The Governor abused his discretion and his decision

15   was not supported by "some evidence" as required by law, and,

16   therefore, was arbitrary and capricious.  Discretion is abused

17   and due process denied when a parole conclusion has no rational

18   relationship to the facts on which it is purportedly based.  The

19   Governor's recharacterization of Petitioner's commitment offense

20   and unsupported speculation cannot stand.

21       D. The Governor Relied On Unchanging Factors To Reverse The
            Parole Date

22

23       The Ninth Circuit Court of Appeals has held that a prisoner's

24   commitment offense alone may not justify the denial of parole

25   indefinitely.  In *Biggs v. Terhune*, 334 F.3d 910, 916, the Court

26   acknowledged that a prisoner's crime and other pre-commitment

27   factors may initially support a parole denial, but warned: "Over

28   time, however, should [the prisoner] continue to demonstrate

                                 16

1  exemplary behavior and evidence of rehabilitation, denying him a
2  parole date simply because of the nature of [the] offense and
3  prior conduct would raise serious questions involving his
4  liberty interest in parole."  Indeed, "[a] continued reliance in
5  the future on an unchanging factor, the circumstance of the
6  offense and conduct prior to imprisonment, runs contrary to the
7  rehabilitative goals espoused by the prison system and could
8  result in a due process violation." (*Id.* At 917.)
9     In sum, the factual record contains no evidence that paroling
10 petitioner will "pose an unreasonable risk of danger to
11 society."  He has behaved well in prison, worked hard, attended
12 numerous rehabilitation programs and been deemed by the Board
13 psychologists and correctional counselors to be of no particular
14 threat to anyone.
15    The real danger of allowing the parole determination to hinge
16 upon the frozen factor of the commitment offense is that it
17 converts an indeterminate life sentence into the infinitely
18 harsher sentence of life in prison without chance of parole.
19 This results in a fundamental change to the sentencing guideline
20 established by the Legislature.  As explained by the United
21 States District Court, Eastern District:
22         "Continuous reliance on unchanging circumstances
           transforms an offense for which California law provides
23         eligibility for parole into a de facto life imprisonment
           without the possibility of parole.  The court asks
24         rhetorically – what is it about the circumstances of
           petitioner's crime or motivation which are going to
25         change?  The answer is nothing.  The circumstances of
           the crimes will always be what they were, and
26         petitioner's motive for committing them will always be
           trivial.  Petitioner has no hope of ever obtaining
27         parole except perhaps that a panel in the future will
           arbitrarily hold that the circumstances were not that
28         serious or the motive was more than trivial.  Given that

17

1     no one seriously contends lack of seriousness or lack of
    triviality at the present time, the potential for parole
2     in this case is remote to the point of non-existence.
    Petitioner's liberty interest should not be determined
3     by such an arbitrary, remote possibility."

4 (*Irons v. Warden of Cal. State Prison-Solano,* (N.D. Cal. 2004)

5 358 F.Supp 2nd 936, 947.)

6     As the *Irons* court noted, reliance on the commitment offense

7 leaves a change in the Board of Parole Hearings, or the election

8 of a new Governor, as a prisoner's only hope of parole, as every

9 evaluation will turn on a factor that necessarily can never

10 change. (*Id.*) A decision based on a few facts that will *always*

11 form the basis for denying parole, amounting to a permanent and

12 virtually automatic denial of parole in contravention of due

13 process, is clearly arbitrary and capricious. "The presence of

14 a large measure of discretion in a parole system ... does not

15 alter the fundamental due process limitation against capricious

16 decision-making. A legislative grant of discretion does not

17 amount to a license for arbitrary behavior. When the parole

18 board [or Governor] bases its decision on factors that bears no

19 rational relationship to rehabilitation or deterrence, it

20 transgresses the legitimate bounds of its discretion." (*In re*

21 *Fain* (1983) 139 Cal.App.3d 295, 307 [quoting *Block v. Potter*

22 (3rd Cir. 1980) 631 F.2d 233, 236-237].)

23                               **CONCLUSION**

24     Clearly, the facts at hand do not meet the requirements set

25 forth by the regulations and the courts to justify the

26 Governor's revocation of petitioner's grant of parole.

27     Petitioner is being held indefinitely for a crime that

28 clearly does not go beyond the necessary minimum for conviction.

1   His almost perfect post-conviction history demonstrates that he

2   is not a current unreasonable threat to public safety.

3   Petitioner is being confined behind prison walls indefinitely

4   despite his glowing psychological evaluations, and his good in-

5   prison conduct.  In light of these circumstances, petitioner's

6   continued detention is equal to or surpasses the point feared by

7   the *Biggs* court, where the commitment offense, in light of

8   significant and compelling evidence of perfect post-commitment

9   behavior, no longer has any relation to a present finding of

10  dangerousness.  Continued reliance upon it violates petitioner's

11  right to due process.

12      The Governor's failure to follow the procedures specified by

13  statute, and ignoring the factors that the Board is required to

14  follow in establishing an indeterminate sentence as particularly

15  egregious, resulted in a due process violation.  The Governor

16  failed to follow the due process mandated by constitutional and

17  statutory authority and his decision should be reversed.

18

19  DATE: August 6, 2006                    Respectfully submitted,

20

21                                          Salvatore Graffagnino

22                                          Petitioner, In Pro Per

23

24

25

26

27

28